THE NAVAJO TRIBE OF INDIANS

Plaintiff-Appellee

vs.

IDA HOLYAN

Defendant-Appellant

Decided on August 22, 1973

Merwin Lynch, Deputy Trial Prosecutor, Office of the Prosecutor, Window Rock, Arizona, for Plaintiff-Appellee

Freddie Miller, D.N.A., Crownpoint, New Mexico, for Defendant-Appellant

Before KIRK, Chief Justice, BENNALLEY and YELLOWHAIR, Associate Justices

KIRK, Chief Justice

This case arose from an alleged altercation in the parking lot of the Yah Ta Hey Trading Post at the junction of Highways 666 and 264. The defendant is charged with assault, assault and battery, and malicious mischief against an Indian. An interlocutory appeal on the question of jurisdiction was allowed.

The sole question presented and decided by this case is whether or not the Courts of the Navajo Nation have jurisdiction in a

criminal case arising in the checkerboard area, over an Indian defendant, when the complaining witness is also an Indian.

I

The Navajo Tribal Council adopted Resolution CMY-28-70, codified 7 N.T.C. § 134, on May 7, 1970. This resolution extended the jurisdiction of the Navajo Courts to Navajo "Indian Country" and defined Navajo Indian Country to include the Eastern Navajo Agency, Land Management Districts 15, 16 and 19 with the exception of Gallup.

The validity of Resolution CMY-28-70 and amended 7 N.T.C. § 134 has been questioned by the defendant-appellant on the grounds that the resolution has not been approved by the Secretary of the Interior as provided by 7 N.T.C. § 1(e) and 17 N.T.C. § 1.

Since the Navajo Nation is a subordinate sovereignty, its powers of self government are subject to treaties and to the express legislation of Congress representing the dominant sovereignty. Therefore, the Congress could validly require the approval of the Secretary of the Interior before any Tribal resolution becomes effective. However, it does not follow that the Navajo Tribal Council may, on its own initiative, abdicate its legislative function to any other authority or body. A weaker power does not surrender its independence and its right to self government by associating itself with a stronger power and accepting its protection. Worcestor v. Georgia, 8 L.Ed. 483 (1832), Williams v. Lee, 358 U.S. 217 (1959), Iron Crow v. Oglalla Sioux Tribe

of the Pine Ridge Reservation, 231 F.2nd 89-94 (8th Cir. 1956).

The sovereign power of the Navajo Nation has been delegated to the Council by the members of the Navajo Nation; the Council may not abdicate its powers of self government in the absence of a treaty or the clearly expressed constraint of the dominant sovereignty.

This is reflected by the Court of Appeals for the District of Columbia Circuit in the case of Oliver v. Udall:

> While it is so that Congress retains paramount authority to legislate for and enforce its laws on all the tribes in certain respects, only in special instances has it done so. Otherwise, as the Supreme Court so recently stated:
>
>> "the cases in this Court have consistently guarded the authority of Indian governments over their reservations. Congress recognized this authority in the Navajos in the Treaty of 1868 and has done so ever since. If this power is to be taken away from them, it is for Congress to do it." Williams v. Lee, 358 U.S. 217, 233 (1959)

It is our view that the Secretary's approval of the tribal action in 1959 was entered in keeping with that abstinence from federal intervention in the internal affairs of an Indian tribe which the law clearly requires. The Secretary had simply recognized the valid governing authority of the Tribal Council. Williams v. Lee, 221, 222; Treaty of 1868; 306 F.2nd 819, 822, and 823, (CA DC 1962).

Although the defendant-appellant relies on 25 CFR § 11.1, et seq. which requires Tribal ordinances to be approved by the Secretary

-80-

of the Interior, the provisions of 25 CFR § 11 _et seq_. are only applicable to those reservations on which Court of Indian Offenses are maintained. 25 CFR § 11.1(a).

It has been repeated by this Court (_Navajo Tribe of Indians v. Orlando Helicopter Airways_, A-CV-05-72, January 12, 1972,) and by Federal Courts (_Oliver v. Udall_, _supra_) that 25 CFR § 11, _et seq_. has no applicability to the Navajo Nation. Although the Law and Order Code was substantially adopted verbatim, it takes its effect as tribal _law_ and not as the law of the United States imposed on the Tribe. Not only is the Navajo Tribal Council free to amend, replace or abolish it at any time without the consent or approval of the Secretary of the Interior, but any attempt to delegate such a power is completely void. The approval and signature of the Secretary or his delegated representative is a meaningless formality. This is reflected by the language of _Oliver v. Udall_, and was apparently acknowledged by the opinion of the Assistant Solicitor, Legal Activities, to the Commissioner of Indian Affairs./1.

II

The validity of Resolution CMY-28-70, 7 N.T.C. § 134 depends not only whether or not the requirement of approval by the Secretary of the Interior is a valid prerequisite to the validity of Tribal resolutions, but also on whether or not such an judicial power by the Navajo Nation is precluded by the Federal statutes.

18 U.S.C. § 1152 established the authority of an Indian tribe to punish any Indian committing any offense in Indian Country. The term "Indian Country" is defined by 18 U.S.C. § 1151. Therefore, if the Yah Ta Hey junction, the site of the incident, is within one of the statutory definitions of "Indian Country" then the grant of jurisdiction by the Navajo Tribal Council is valid.

Section 1141(b) describes "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state..." as within Indian country.

A determination that a grant of jurisdiction to the Navajo Courts by the Tribal Council is valid under these provisions requires a definition of "dependent Indian community."

The Tenth Circuit Court of Appeals considered the definition of "dependent Indian community" in U.S. v. Martine, 441 F.2nd 1022 (10th Cir., 1971). The Martine case involved the prosecution of an Indian for involuntary manslaughter. The Court acknowledged that federal jurisdiction under the Major Crimes Act, 18 U.S.C. § 1153 rested on the claim that the Ramah area of the "Checkerboard" area is a "dependent Indian community." Although the incident involved in the Martine case took place on land which has been purchased by the Navajo Tribe from a corporate owner, the Court considered that this was only one of the several relevant factors which are to be considered in making a determination that the area was a "dependent Indian

community" and thus within the definition of "Indian Country."/2.

This expansive interpretation of "Indian Country" is justified by legislative history as well as by case authority. The Tenth Circuit Court pointed this out in Tooisgah v.U.S., 186 F.2nd 93 (10th Cir., 1950) which construed the prior law relating to federal jurisdiction over the Major Crimes. The statutes in effect at the time of the homicide for which Tooisgah was convicted provided for federal jurisdiction over homicides "within the limits of any...reservation:"

> "...we are convinced that Congress did not intend to use the term 'Indian Country' and 'within the limits of any ...reservation' synonymously. When the legislative scheme is considered in its historical setting, we think of it controlling significance that instead of employing the familiar term 'Indian Country' with its broad and flexible definition to delineate federal jurisdiction, Congress chose language carefully designed to recognize the sovereign jurisdiction of a state...In the re-enactment of 548 as Section 1153, Title 18 USCA, Congress substituted 'Indian Country' for 'on (or) within any Indian reservation' thus conferring federal jurisdiction over the enumerated crimes when committed in Indian country as defined in Section 1151, 186 F.2nd at 99."

The Tribal Council, in passing Resolution CMY-28-70, considered and stated its determination as to the nature of the area, the relationship of the inhabitants of the area to Indian tribes and to the federal government, and the established practice of the government agencies toward the area. The factors considered and the facts cited, such as the fact that over 60% of the land in the Eastern Navajo Nation boundaries is either owned by the Navajo Tribe or held in trust for Navajo Indian allottees, that the population of the Eastern Navajo Agency is predominantly Navajo, that the Navajo Tribe has for many

years accepted responsibility for law enforcement in the Eastern Navajo Agency and has paid the full costs thereof without assistance from the State of New Mexico, are sufficient to sustain the determination that the Eastern Navajo Agency Land Management Districts 15, 16 and 19 with the exception of Gallup, New Mexico, are Navajo "Indian Country." United States v. Martine, supra at 1023-24.

An alternative basis on which the jurisdiction of the Courts of the Navajo Nation over Holyan may be sustained is 18 U.S.C. § 1152:

> "This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in Indian country who has been punished by the local law of the tribe..." (emphasis supplied)

The clauses are clearly disjunctive. So far as the Congress is concerned, the Indian Courts may assert jurisdiction over any offense which involves an Indian complainant and an Indian defendant regardless of where the cause arose. The only limitations on such worldwide jurisdiction are imposed by the Due Process Clause incorporated into the 1968 Indian Civil Rights Act, the statutory jurisdictional limitations set forth by the Navajo Tribal Code Title 7, and Federal statutes withdrawing tribal jurisdiction in clearly specified circumstances.

Therefore, even if it were determined that Yah Ta Hey Trading Post was not within "Indian Country" an independent basis for jurisdiction exists.

This case is remanded for further proceedings not inconsistent with this opinion.

1.

United States Department of the Interior
Office of the Solicitor
Washington, D.C.

MEMORANDUM

Sol...Indians
June 8, 1959

To:        Commissioner of Indian Affairs
From:      Assistant Solicitor, Indian Legal Activities
Subject:   Approval of Tribal Ordinances

With respect to the Navajo Tribal resolutions recently enacted involving tribal labor policy, I am aware of nothing in the law or regulations concerning Indian affairs which requires you to approve or disapprove such resolutions.

It has been emphasized that "Indians are not wards of the Executive officers, but wards of the United States." (Ex Parte Bi-A-Lil-Le, 100 Pac 450 (1900); see Fed. Indian Law, 1953, p. 563). Congress has not required the Secretary to approve tribal ordinances, nor has the President or the Secretary, under authority delegated by Section 2 of 25 U.S.C., seen fit to issue regulations referring to Secretarial consideration or approval of tribal ordinances. Many tribal consitutions adopted pursuant to Section 16 of the Indian Reorganization Act (25 U.S.C. 476, 48 Stat. 987), contain provisions implying Secretarial consideration of tribal ordinances, at least, in special cases.  These provisions were inserted by the Tribe with the consent of the Secretary. This is within his authority, but is not a Congressional mandate.  The Navajos have no such written constitution.

The Secretary has a responsibility to encourage and assist Indian tribes under federal guardianship to carry out their tribal governmental functions and to conduct their tribal business in a legal and efficient manner.

This task is obviously limited, however, by personnel and funds, as well as by the Congressional policy to encourage the Indians to assume continuously increasing responsibility and to develop self reliance.

In addition, certain resolutions may concern tribal action which by statute require Secretarial approval, such as encumbrances of tribal property. Here the Secretary just acts because the statute requires approval of the specific act. The resolutions attached are not of this nature.

2.   <u>U.S. v. Martine</u>, 442 F.2nd 1022, 1023-24 (10th Cir., 1971)

The trial court received evidence as to the nature of the area in question, the relationship of the inhabitants of the area of Indian Tribes and to the federal government, and the established practice of government agencies toward the area.   The testimony of enforcement Officers and BIA officials supports the trial court's holding that the site of this incident was Indian Country.

Appellant urges that such a holding implies that whenever a group of Indians is found, e.g., in Los Angeles, there is a dependent Indian community.   This does not follow.   The test we are applying here is not so simple.   Only after considering all of the various factors we have noted, as well as any other relevant factors, can the trial court determine the status of a particular area, the mere presence of a group of   Indians   in   a   particular   area   would   undoubtedly   not   suffice.

BENNALLEY, Associate Justice, and YELLOWHAIR, Associate Justice,

concur.